

November 28, 2022

**VIA ECF**
Honorable Roanne L. Mann
United States District Court
Eastern District of New York

   **Re:**  Valle v. Dollar N Discount LLC et al

Dear Judge Mann:

  This office represents Plaintiff Valle in the above-referenced matter. In accordance with the holding in *Cheeks v. Freeport Pancake House, Inc.*, 2015 WL 4664283 (2d Cir. 2015), this letter motion is submitted jointly with all Defendants to respectfully request that Your Honor approve the within Settlement Agreement and Release (the "Agreement") between the Parties, annexed hereto as Exhibit A.

  This Agreement represents a good faith effort between experienced labor and employment counsel to negotiate a resolution to this action brought pursuant to the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"), resulting in a settlement which provides Plaintiff with a satisfactory recovery of his damages under applicable law.

I.  **Plaintiff's Allegations and Defendant's Responses**

  On April 5, 2022 Plaintiff, represented by counsel, commenced a wage and hour lawsuit against Defendants (the "Complaint"). The Complaint alleges that Defendants violated the FLSA and NYLL. Specifically, Plaintiff alleges that Defendants employed her at their discount store to perform various jobs within the store, and that she worked in excess of forty (40) hours per week without overtime compensation. Specifically, Plaintiff alleges that she was employed by Defendants from 2018 through July 2021, that she worked five (5) days per week, approximately ten (10) hours per day, (for a total of approximately fifty (50) hours per week), and she was compensated straight time for all hours worked with no overtime paid by Defendants. Plaintiff alleges that her starting pay was fifteen dollars ($15.00) per hour. Plaintiff had schedules corroborating that she was scheduled to work (50) fifty hours per week. However, Defendants



allege she was only employed for a short amount of time, and she did not work as many hours as she alleges. Defendants have witnesses that can corroborate their version

In sum, there is a bona fide dispute between the Parties regarding the merits of Plaintiff's wage and hour claims. The instant settlement constitutes the Parties' effort to resolve the same in an amicable fashion through arm's length bargaining.

II.     **Settlement Negotiations**

Shortly after the complaint was filed, Plaintiff provided Defendants with their damages calculation, which totaled approximately $18,400. Accordingly, Plaintiff conveyed an initial demand of $20,000 to account for attorneys fees up to that date. Plaintiff's damage calculations *and* initial demand were wholly based on Plaintiff's maximum possible recovery if she were able to establish each and every claim and did not account for any of the aforementioned arguments comprising Defendants' position.

While the Parties were engaging in informal discovery, Parties made significant strides on settlement discussions and also engaged the assistance of mediator Joseph DiBenedetto and were able to settle the case with a remote mediation. With each party recognizing the risks associated with litigation during and after an uncertain time for all businesses, the Parties came to an agreement to settle the case. Specifically, following extensive negotiations, the Parties reached a settlement in the amount of $9,000 inclusive of attorneys' fees and costs,

III.    **The Settlement is Fair and Reasonable**

The Second Circuit's decision in *Cheeks v. Freeport Pancake House, Inc.*, 2015 WL 4664283 (2d Cir. 2015) provides that stipulated dismissals settling FLSA claims with prejudice require the approval of the district court or the Department of Labor. An FLSA settlement should receive judicial approval where it is "fair and reasonable." *See Wolinsky v. Scholastic, Inc*. 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). Generally, there is a "strong presumption in favor of finding a settlement fair," as "the Court is generally not in as good a position as the Parties to determine the reasonableness of an FLSA settlement." *Crabtree v. Volkert, Inc*., No. 11–0529–WS–B, 2013 WL 593500, at *3 (S.D. Ala. Feb. 14, 2013). Moreover, "[c]ourts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes." *In re Penthouse Executive Club Compensation Litig*., No. 10-cv-1145, 2014 U.S. Dist. LEXIS 5864, at *22 (S.D.N.Y. Jan. 14, 2014) (noting that the inherent adversarial nature of a litigated FLSA case is adequate indicator of fairness of settlement). In considering whether a settlement is



fair and reasonable, the principal question is "whether the agreement reflects a 'reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching.'" *Le v. SITA Info. Networking Computing USA, Inc.*, No. 07-CV-86, 2008 WL 724155, at *1 (E.D.N.Y. Mar. 13, 2008) (*quoting Lynn's Food Stores, Inc. v. U.S. By & Through U.S. Dep't of Labor, Employment Standards Admin., Wage & Hour Div.*, 679 F.2d 1350, 1354 (11th Cir. 1982)).

The Agreement in this matter is a fair and reasonable resolution of the bona fide disputes between the Parties. This is because the Agreement: (1) enables the Parties to avoid the possible substantial burdens and expenses of establishing their respective claims and defenses and accounts for the risks in proceeding with the litigation; and (2) is the product of arm's length bargaining between experienced labor and employment counsel which was completely devoid of any semblance of fraud or collusion. *See gen. Wolinsky*, 900 F. Supp. 2d at 335. Accordingly, it is respectfully requested that the Agreement be approved in its entirety.

*The Risk and Expenses Faced by the Parties*

Both Parties in this matter faced substantial risks in moving forward in this litigation. In the event that a trier of fact determined that Plaintiff was properly compensated for all overtime hours, if any, worked, or that she worked substantially less overtime hours than is alleged in the Complaint, Plaintiff's unpaid wage claims would be in serious jeopardy and/or seriously diminished. Finally, Plaintiff faced the prospect of waiting many months, if not years, for the matter to proceed through trial. Moreover, there remains a very real risk to Plaintiff that Defendants may no longer be economically viable even if she was successful at the end of litigation. At this stage of the proceedings, Plaintiff is obtaining a recovery without having to go through the time-consuming and risky process of litigating his claims.

Conversely, while Defendants were confident that they would be able to challenge many of Plaintiff's claims, they were also mindful of the risk that Plaintiff may have prevailed on some claims, and that even if Defendants were successful, it would have only occurred after a protracted litigation and at a significant cost. The costs of litigation and prospects of liability for Defendants clearly weighed in favor of early resolution. Accordingly, both Parties faced substantial risks in proceeding with the litigation, which weighs in favor of approval of the Agreement.

*The Agreement was the Product of Arm's-Length Bargaining Devoid of Fraud or Collusion*



It cannot be disputed that the Agreement was the product of legitimate bargaining between experienced labor and employment counsel which was devoid of any resemblance of fraud or collusion. Plaintiff's counsel zealously advocated on behalf of her client from the inception of this matter through negotiating the amount of the settlement to memorializing the terms of same.

Similarly, Defendants' PRO BONO counsel worked to ensure that Defendants reached a settlement where Plaintiff was not receiving any more than she may be entitled to in the event she was successful at trial while taking into account the expensive cost of a lengthy trial. The Agreement constitutes an effort by experienced labor and employment counsel for both Parties to resolve the dispute under the best possible circumstances for their respective clients. Accordingly, the Agreement should be approved by the Court.

IV. **Plaintiff's Application for Attorney's Fees Should be Approved as Fair and Reasonable**

Under the settlement, the Plaintiffs' counsel will receive $3,000 from the total. This represents a third (33.33%) of the settlement amount and constitutes the number reflected in the Plaintiff's retainer agreement, which includes all costs.

The amount provided to the Plaintiffs' counsel under the settlement is fair and reasonable and well within the range of fees typically awarded in cases in this Circuit. *See Castaneda v. My Belly's Playlist LLC,* No. 15 Civ. 1324 (JCF) (S.D.N.Y. Aug. 17, 2015) (Francis, M.J.) (awarding the Plaintiff's attorneys a contingency fee of one-third to account for risks in litigation); *see also Calle v. Elite Specialty Coatings Plus, Inc.,* 2014 U.S. Dist. LEXIS 164069 at *9 (E.D.N.Y. Nov. 19, 2014) ("A one-third contingency fee is a commonly accepted fee in this Circuit."). In light of the nature of the issues herein and the extensive negotiations necessary to reach the agreed-upon settlement, Plaintiff requested award is reasonable. *See Alleyne v. Time Moving & Storage Inc.*, 264 F.R.D. at 60; *see also McDaniel v. Cnty. of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010). There is ample authority in this circuit holding that a 33.33% attorneys' fee is well within the range of fees typically awarded in wage and hour cases. See Castaneda v. My Belly's Playlist LLC. No. 15 Civ. 1324 (JCF)(S.D.N.Y. Aug. 2015) (awarding the Plaintiff's attorneys a contingency fee of one-third to account for risks in litigation).

A brief biography of the attorney who performed billed work in this matter is as follows:

    a. Lina Franco-Stillman has been practicing law since 2012. Prior to forming Stillman Legal, she was an associate at two (2) law firms where she practiced



exclusively in the areas of Labor and Employment with an emphasis on wage and hour litigation.

Miss Stillman speaks fluent Spanish, Italian and Portuguese and can translate and communicate with all her clients without the need of an interpreter.

She is an active member of the LGBT Rights Committee of the New York City Bar Association is an active Pro Bono Counsel at the Bar Association Clinics and teaches 4th Amendment Law to Sophomores and Juniors at Borough of Manhattan Community College.

### V.  **Conclusion**

For all of the reasons set forth above, the Parties request that the Court approve the Agreement and enter the proposed Stipulation and Order of Dismissal that is being submitted simultaneously herewith

Respectfully submitted,

Lina Stillman

cc:     All counsel (*via* ECF)